# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
|  | : |  |
|  | : | NO. 05-00035 |
| v. | : |  |
|  | : |  |
|  | : | CIVIL ACTION |
| ROBERT MERRITT | : |  |
|  | : | NO. 06-4619 |

## Memorandum and Order

YOHN, J.                                                    July ___, 2007

       Defendant Robert Merritt has filed a Motion to Vacate, Set Aside, or Correct Sentence

Pursuant to 28 U.S.C. § 2255 ("§ 2255 motion").  Merritt presents two claims alleging

ineffective assistance of trial counsel.  For the reasons set forth below, I will deny the motion

without an evidentiary hearing.

## I.      Procedural History

       On August 8, 2004, Merritt was arrested in Philadelphia for possessing a loaded Taurus

.357 caliber seven-shot revolver after having been convicted in Philadelphia County of a felony.[1]

On January 25, 2005, a federal grand jury charged Merritt with possession of a firearm by a

convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).   After a two day trial, the jury

_____

       [1]On July 16, 2001, in the Court of Common Pleas for Philadelphia County, Merritt was
convicted of possession with intent to deliver a controlled substance.  On October 24, 2001, he
pleaded guilty in the same court to two other incidents of possession with intent to deliver a
controlled substance, and was sentenced on all three cases on that date.

returned a verdict of guilty on June 14, 2005 on the offense charged in the indictment. Attorney Harry A. Seay was retained by Merritt to represent him from arrest through jury verdict.

On June 5, 2006, this court sentenced Merritt to 194 months of imprisonment, five years supervised release, and a $1,000 fine. Merritt filed a timely notice of appeal, but later filed a motion to withdraw his notice of appeal, which the Third Circuit granted on September 6, 2006. On October 13, 2006, Merritt filed the instant § 2255 motion. Merritt's counsel at sentencing, during the appeal process, and currently is attorney Burton A. Rose.

Merritt's § 2255 motion presents two claims alleging ineffective assistance of trial counsel for counsel's failure to impeach the credibility of a "key" government witness, Quandre Anderson, and his failure to object to a particular jury instruction. Merritt seeks an evidentiary hearing in order to advance these claims.

## II.    Factual History

On August 8, 2004, at about two o'clock in the morning, Harvey Bass, a Philadelphia police officer, responded to a radio call directing him to 8th and Venango Streets in Philadelphia's 25th Police District. (Notes of Testimony "(N.T.)" 1.68.) As he arrived to this location, Officer Bass observed a white automobile traveling at an excessive speed. (N.T. 1.69.) The vehicle pulled into the traffic lane in a reckless manner, ran a stop sign, and failed to signal a turn. (N.T. 1.69, N.T. 1.81.)

Officer Bass pulled the vehicle over and as he approached the driver's side of the vehicle, he observed two occupants inside. (N.T. 1.69-70, 1.84.) The driver, Quandre Anderson, said he did not have a driver's license, which Officer Bass verified by computer, so Officer Bass

2

proceeded to "live stop" the vehicle[2] and directed Anderson and his passenger, identified as

Merritt, to exit the vehicle.  (N.T. 1.70-71.)  After Merritt exited the vehicle, Officer Bass went

over to the passenger side, looked inside with his flashlight and, within "a few seconds,"

observed the handle of a gun protruding from beneath the front passenger seat.  (N.T. 1.72-77,

1.79-81, 1.85.)[3]  Officer Bass retrieved the gun, which was a Taurus .357 caliber seven-shot

revolver with the serial number TA788986.  (N.T. 1.75-76.)  Officer Bass then arrested Merritt.

(N.T. 1.75, 1.77, 1.79.)

      Officer Bass also arrested Anderson after he found Anderson to be in possession of

marijuana.  (N.T. 1.77-78.)  At trial, Anderson testified as a witness for the government.  (*See*

N.T. 1.86-2.30.)  Anderson testified that he had known Merritt since childhood and, before their

arrest in the early morning of August 8, 2004, he had met Merritt at a local bar and had been

smoking marijuana with him.  (N.T. 1.88-90.)  Anderson also testified that he did not own nor

had he ever seen the gun in this case.  (N.T. 2.15.)  Further, Anderson testified that once he and

Merritt were placed in the police wagon, Merritt said to Anderson regarding the gun, "[You]

should take that for the team."  (N.T. 2.16; *see also* N.T. 2.26.)

---

      [2]The Pennsylvania Vehicle Code provides, "If a person operates a motor vehicle . . . on a
highway or trafficway of this Commonwealth . . . where the person is unlicensed, as verified by
an appropriate law enforcement officer in cooperation with the department, the law enforcement
officer shall immobilize the vehicle . . . ."  75 Pa. Cons. Stat. Ann. § 6309.2(a)(1).  Pursuant to
the City of Philadelphia's "Live Stop" program, once a police officer learns that a vehicle must
be immobilized in accordance with § 6309.2, the vehicle is impounded and an inventory search is
conducted.  (N.T. 1.70-71.)

      [3]At trial, Officer Bass testified that the "bright nickel colored" gun "stood out" against the
burgundy floor mats of the car.  (N.T. 1.76, 1.81.)  He also physically demonstrated for the jury
exactly what portion of the gun was sticking out from under the seat Merritt had just occupied.
(N.T. 1.76-77.)

Anderson had no prior felony record and no prior arrests involving firearms.  (N.T. 2.14.-15.)  At trial, Anderson explained that he had pleaded guilty to two consolidated marijuana possession cases, including his arrest with Merritt on August 8, 2004.  (N.T. 2.13-14, 2.21-22, 2.27.)  Anderson stated that in his first arrest, he possessed eleven "nickel" (five-dollar) bags of marijuana (N.T. 2.22, 2.27-28), while on the night he was arrested with Merritt, he possessed thirteen nickel bags of marijuana (N.T. 2.26-28).  As a result of pleading guilty to the consolidated marijuana cases, Anderson received a sentence of three months non-reporting probation and a $1,000 fine.  (N.T. 2.14, 2.21-22.)

Tyrone Lane and his girlfriend, Aesha Wheeler, also testified at trial.  (*See* N.T. 1.29-37; N.T. 1.38-1.65.)  Lane identified the .357 Taurus found under Merritt's seat as the gun he had lawfully purchased and reported stolen in May 2004 from his Norristown apartment on Airy Street.  (N.T. 1.32-33.)

Wheeler testified that she and Lane had been in a relationship for two years, but had taken a break from approximately April to May of 2004.  (N.T. 1.39-40.)  She explained that she had been living with Lane in the Airy Street apartment before that break and that she stayed alone in that apartment during the separation.  (N.T. 1.40.)  Wheeler testified that on May 21, 2004, she invited three individuals, including a man she identified as Merritt, from a neighborhood bar back to the Airy Street apartment.  (N.T. 1.40-44.)  Wheeler explained she knew Merritt as "Bishop," having seen him in the bar "about thirty" times before.  (N.T. 1.42-43.)  Wheeler testified that about an hour after arriving at the Airy Street apartment, she left Merritt and the other male to drive her girlfriend home.  (N.T. 1.45.)  When Wheeler returned about five to ten minutes later, she found the door unlocked and no one in the apartment.  (N.T. 1.46.)  Wheeler

4

observed that boxes packed with Lane's belongings were open and that Lane's gun was missing. (N.T. 1.46-47.)  Wheeler testified that she and Lane went to the Norristown Police Department the next day, on May 22, 2004, to report the gun stolen.  (N.T. 1.48-49, 1.64.)  Wheeler further testified that she told the Norristown Police Department that Merritt was in the Airy Street apartment when the gun was stolen.  (N.T. 1.49.)

## III.    Legal Standards

### A.       28 U.S.C. § 2255 Standards

Under § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct his sentence if "the sentence was imposed in violation of the Constitution or laws of the United States, . . . the court was without jurisdiction to impose [the] sentence, . . . the sentence was in excess of the maximum authorized by law, or [the sentence] is otherwise subject to collateral attack."  § 2255.  When a prisoner files a § 2255 motion, the district court may dismiss the motion without an evidentiary hearing if "the motion and files and records of the case show conclusively that the movant is not entitled to relief."  *Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989) (citation omitted).  In making this determination, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record."  *Id.*

"A Section 2255 petition is not a substitute for an appeal."  *Gov't of V.I. v. Nicholas*, 759 F.2d 1073, 1074-75 (3d Cir. 1985) (citation omitted).  However, defendants need not raise ineffective assistance of counsel claims on direct appeal.  *United States v. DeRewal*, 10 F.3d 100, 103-04 (3d Cir. 1993); *see also United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994) ("A § 2255 motion is a proper and indeed the preferred vehicle for a federal prisoner to allege

ineffective assistance of counsel.").

**B.     Ineffective Assistance of Counsel**

To establish ineffective assistance of counsel, a defendant must show that:  1) his attorney's performance was deficient, and 2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To show deficiency, a defendant must establish that counsel's performance "fell below an objective standard of reasonableness under prevailing professional norms."  *Buehl v. Vaughn*, 166 F.3d 163, 169 (3d Cir. 1999) (citing *Strickland*, 466 U.S. at 688).  To show prejudice, a defendant must establish that "counsel's errors were so serious as to deprive him of a fair trial, a trial whose result is reliable."  *Strickland*, 466 U.S. at 687.  "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding," *id.* at 694, rather "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 695.  Under *Strickland*, counsel is presumed to have acted within the range of "reasonable professional assistance," and the defendant bears the burden of "overcoming the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Id.* at 689 (citation omitted).  While a defendant has the right to effective assistance of counsel, courts have explained that the Constitution does not guarantee the right to a perfect trial.  *See Marshall v. Hendricks*, 307 F.3d 36, 85 (3d Cir. 2002) (noting that "the court is not engaging in a prophylactic exercise to guarantee each defendant a perfect trial with optimally proficient counsel, but rather to guarantee each defendant a fair trial, with constitutionally competent counsel").

**IV.     Discussion**

6

In his § 2255 motion, Merritt challenges his conviction with two claims of ineffective assistance of counsel.  He argues that he suffered from ineffective assistance of counsel because trial counsel:  (1) failed to impeach adequately the credibility of a key government witness, Quandre Anderson, and (2) failed to object to an inadequate jury instruction regarding Merritt's prior felony conviction.  Additionally, Merritt seeks an evidentiary hearing in which to advance these claims.  Because the record of this case does not support these claims, I will deny Merritt's petition without an evidentiary hearing.

A.      **Allegations of Failure to Impeach Adequately the Credibility of Quandre Anderson**

Merritt's first ineffective assistance of counsel claim is that trial counsel did not adequately impeach the credibility of Quandre Anderson, the prosecution's "key" witness. (Pet'r's Br. 1-6.)  The crux of this claim is that trial counsel failed to explore Anderson's plea agreement with the government related to his two marijuana charges.  (*Id.* at 3.)  Merritt contends that Anderson was actually charged with two counts of possession with intent to distribute marijuana, but, by plea agreement, was permitted to consolidate the two cases into a single guilty plea to marijuana possession and, consequently, received a much lighter sentence.[4]  (*Id.* at 3-4.) This favorable penal arrangement provided Anderson with an incentive to testify against Merritt.

---

[4]Merritt states that according to discovery given to trial counsel by the government, Anderson was charged with possession with intent to distribute marijuana under 21 U.S.C. § 841(a)(1) on two occasions–April 6, 2004 and August 8, 2004, when he was arrested with Merritt.  (Pet'r's Br. 3.)  On March 28, 2005, Anderson pleaded guilty to one count of possession of marijuana in violation of 21 U.S.C. § 844(a) pursuant to an agreement with the government that stated Anderson could receive a maximum sentence of twelve months imprisonment, a fine as much as $100,000, or both.  (*Id*. at 4.)  Anderson testified that he was sentenced to three months non-reporting probation and a $1,000 fine.  (N.T. 2.14, 2.21-22.)  The sentence was imposed on March 28, 2005, the day of the guilty plea, and almost three months before Merritt's trial.

(*Id.* at 5-6.)  According to Merritt, the jury never learned the circumstances of how Anderson came to testify for the government and against his childhood friend (*id.* at 5), and trial counsel's "omitted cross-examination" was ineffective assistance of counsel (*id.*).  However, the record does not support Merritt's claim that trial counsel's efforts to impeach Anderson were deficient and prejudiced his defense.

First, Merritt is unable to show that trial counsel's cross examination of Anderson "fell below the objective standard of reasonableness."  *See Strickland*, 466 U.S. at 687-88.  Strategic choices made by counsel after diligent investigation are "virtually unchallengeable."  *Id.* at 690. Counsel's approach to impeachment is a tactical decision and "such decisions do not constitute deficient conduct simply because there are better options."  *Reynoso v. Giurbino*, 462 F.3d 1099, 1113 (9th Cir. 2006).  Therefore, counsel's impeachment strategy is not ineffective unless "the defendant [can] overcome the presumption that, under the circumstances, the challenged action [or lack of action] 'might be considered sound trial strategy.'"  *Strickland*, 466 U.S. at 689 (citation omitted).

In this case, trial counsel's cross examination of Anderson with regard to his consolidated marijuana cases was hardly "omitted," as alleged by Merritt.[5]  Trial counsel's cross examination

---

[5]Trial counsel's cross examination of Anderson on the subject of the consolidated cases is as follows:

> Q. [By Seay] Now, when you say you consolidated and you got three months' probation – non-reporting probation – that was for possession with intent to distribute drugs, is that right?
> A. [By Anderson] Ah, I don't think it was for intent to distribute from – from the papers that I had, it was just possession.
> Q. Are you certain of that – as far as you know?
> A. As far as I know.
> Q. In any event, the consolidation involved – which consolidation means put

made clear Anderson's two drug cases were consolidated into a single guilty plea.  (N.T. 2.21-22.)  The cross examination reaffirmed that the sentence Anderson received after he entered into an agreement with the government was three months of non-reporting probation.  (N.T. 2.21.)  Trial counsel also established the presence of a scale at the scene of Anderson's first arrest and Anderson's possession of $1,500 and eleven bags of marijuana.  (N.T. 2.21-22.)  In closing, trial

---

together?

A.  Yes, sir.

Q.  So, what the Government did was put together two cases of drugs, is that right?

A.  Yes, sir.

Q.  And the first case was the case for which you had been arrested four or five months before the cops stopped you again –

A.  Yes –

Q.  – is that right?

A.  Yes, sir.

Q.  And they found you at that time with about $1500.00 on you?

A.  Yes, sir.

Q.  And scales to weigh the marijuana?

A.  Yes, sir.

It wasn't actually on me, it was in the vehicle that I was in.

Q.  I'm sorry.

But you got charged with it?

A.  Ah, I didn't get – I got charged with what I had on me, personally, the scale and everything else, that wasn't my charge.

Q.  They didn't give you the scale?

A.  No, sir.

Q.  Well, how much weight did they give you in terms of the marijuana that you had?

A.  Ah, I – I believe I had, maybe, eleven bags of marijuana on me that day.

Q.  Okay.

So, what they – the Government did was – give you – took the two cases, the eleven bags of marijuana –

A.  Uh-huh.

Q.  – and the second case, where the cops stopped you the second time with the drugs?

A.  Yes, sir.

(N.T. 2.21-22.)

9

counsel drew upon the testimony elicited from Anderson upon cross examination and repeatedly

emphasized Anderson's open case "hanging around [his] neck for possession of drugs." (N.T.

2.80; *see also* N.T. 2.77, 2.78, 2.82, 2.83, 2.84.)  Trial counsel also argued Anderson's possible

motive to lie:  "Now, who has the least to gain and the most to gain from that police stop?  Don't

worry about the – he's got no – you heard no testimony that he had an open case for having

drugs." (N.T. 2.83.)  While Merritt may take issue with the manner of his trial counsel's cross

examination, the record does not support the conclusion that counsel's performance was

deficient.

Merritt's main argument is that trial counsel should have brought out the fact Anderson

was originally charged with two counts of possession with intent to distribute marijuana to

demonstrate the "benefits" which accrued to him by being allowed to plead guilty to a single

count of possession of marijuana.  However, trial counsel's initial question did suggest that.  (*See*

N.T. 2.21.)  Moreover, trial counsel did bring out the fact that in connection with the first arrest

Anderson had $1,500.00 in his possession and scales to weigh marijuana in the vehicle that he

was in.  (N.T. 2.21-22.)  In addition, Anderson had already pleaded guilty and been sentenced on

March 28, 2005, two and a half months before the trial so that the usual situation of having a

witness who had pleaded guilty but was unsentenced as of the time of trial, with the witness

knowing that his testimony might have an impact on his ultimate sentence, did not occur.

Finally, even though Anderson had been sentenced, trial counsel argued in his closing that he had

an open case "hanging around [his] neck" (N.T. 2.80), which, although factually incorrect, was

not objected to and certainly had at least as much impeachment value to suggest an incentive to

testify against Merritt as would a reference to the reduction in the seriousness of the charges.  By

10

the time of the trial, Anderson had already been sentenced and had no further incentive to testify against Merritt based on outstanding charges.  Indeed, throughout his testimony, he appeared to the court to be a reluctant witness.

Second, Merritt fails to demonstrate how the outcome of his trial might have been different had his trial counsel modified his impeachment strategy.  While Merritt believes Anderson was the prosecution's key witness, a review of the entire record reveals that there was ample testimony and evidence, beyond Anderson's contribution, supporting the jury's determination that Merritt was guilty of the offense charged in the indictment.  This includes testimony from Officer Bass who saw the gun in plain view protruding from underneath the seat Merritt had occupied.  (N.T. 1.74, 1.79-81, 1.85.)  Officer Bass also indicated for the jury just how much of the gun he saw.  (N.T. 1.76-77.)  This evidence alone suffices to support the jury's finding that Merritt knowingly possessed the gun.  *See United States v. McKie*, 112 F.3d 626, 629 (3d Cir. 1997); *United States v. Xavier*, 2 F.3d 1281, 1289 (3d Cir. 1993).  Additionally, Tyrone Lane, the legitimate owner of the .357 Taurus, identified the gun Officer Bass observed sticking out from Merritt's seat as the gun stolen from the Norristown apartment Lane shared with Aesha Wheeler.  (N.T. 1.32-33.)  Further, Aesha Wheeler placed Merritt in that Norristown apartment the night the gun was stolen.  (N.T. 1.40-44.)  With abundant evidence linking Merritt to the gun found under his seat, Merritt fails to make clear how the outcome of the trial would have been different if not for trial counsel's method of cross examining Anderson.  The alleged deficiency was not so serious as to deprive Merritt of a trial whose result was reliable, nor is there a reasonable probability that the result would have been different had trial counsel pursued a different course of cross examination.  Accordingly, as the record conclusively shows that

11

Merritt's first claim is without merit, I will deny it without an evidentiary hearing.

### B.      Allegations of Failure to Object to Trial Court's Jury Instruction

Merritt's second claim of ineffective assistance of counsel alleges that trial counsel failed to object to the content of the trial court's jury instruction regarding Merritt's prior felony conviction.  (Pet'r's Br. 7-8.)  Citing *Old Chief v. United States*, 519 U.S. 172 (1997), and other cases, Merritt argues that this court was required to notify the jury that "this prior felony must not be considered by the jury to suggest that [Merritt] was a bad person, of bad character or that he was possessed of a criminal personality or otherwise had a propensity to engage in unlawful conduct."  (*Id*. at 8.)  Merritt claims that the jury instruction did not protect his right to a fair trial because the reference to his prior felony conviction "would have weighed too much with the jury and may have well persuaded them to prejudge [him] as a result of the natural human tendency to infer criminal propensity and bad character from a prior felony conviction."  (*Id*.)  Yet, Merritt is unable to establish that trial counsel's failure to object to the jury instruction was unreasonable and prejudicial to his defense.

It is an indispensable element of a § 922(g)(1) offense that the accused has been "convicted in any court of, a crime punishable by imprisonment for a term exceeding one year." *United States v. Williams*, 612 F.2d 735, 739-40 (3d Cir. 1979).  In considering the proof of felon status required by § 922(g)(1), the Supreme Court has stated "there can be no question that evidence of the name or nature of the prior offense generally carries a risk of unfair prejudice to the defendant.  The risk will vary from case to case . . . but will be substantial whenever the official record offered by the Government would be arresting enough to lure a juror into a sequence of bad character reasoning."  *Old Chief*, 519 U.S. at 185.  However, in this case, the

12

only evidence with respect to Merritt's criminal history admitted for the jury's consideration was

in the form of a limited stipulation that did not name, describe the nature, or even put a number

to his prior convictions.[6]  *See supra* note 1.  Further, the trial court addressed the potential

problem of unfair prejudice to Merritt by giving the following jury instruction with regard to the

stipulated fact of his prior felony conviction:

> Now, there is one particular comment that I want to make that is very significant with reference to one of the stipulations.
>
> You have heard evidence through a stipulation of the counsel – of counsel – that the defendant was convicted of an occasion prior to this indictment in a court of the Commonwealth of Pennsylvania of a crime punishable by imprisonment of a term exceeding one year.
>
> This prior conviction has been brought to your attention only because it tends to establish one of the elements of the crime of possession of a firearm by a convicted felon as set forth in the indictment, namely, the – the one element that he must have been convicted a prior occasion of a – a crime punishable by more than one year in jail.
>
> The fact that the defendant was found guilty of another crime on another occasion does not mean that he committed this crime on August 8th of 2004.  And you must not use his guilt of the prior crime as proof of the crime charged in this case, other than for the one element of this crime I have just mentioned.
>
> You may define – you may find – the defendant guilty of this crime only if the Government has proved beyond a reasonable doubt all of the elements of this crime and that the defendant committed it.
>
> So, you may only use that stipulation with reference to the one element.  You may not use that in your consideration of any other element as to – and particularly, with reference to whether or not, he did possess the weapon on August 8th of 2004.

(N.T. 2.100-102.)  This jury instruction is not at odds with *Old Chief*, which neither discusses nor

mandates the additional layer of protection Merritt believes is necessary to ensure fair trials in §

---

[6]This stipulation, as read into the record and to the jury, is as follows:  "Prior to August 7th, 2004, defendant Robert Merritt had been convicted in a court of the Commonwealth of Pennsylvania of a felony crime, punishable by imprisonment for a term exceeding one year within the meaning of Title 18 United States Code, Section 922(g)(1)."  (N.T. 2.51.)

922(g)(1) cases.[7]  In fact, no federal case supports Merritt's proposed curative limitation,[8] and,

indeed, courts have approved jury instructions concerning a § 922(g)(1) defendant's prior

convictions that are substantially similar to the one issued in this case.  *See United States v. Beck*,

346 F.3d 305, 308 n.4 (2d Cir. 2003); *United States v. Bowie*, 142 F.3d 1301, 1305 (D.C. Cir.

1998); *United States v. Nguyen*, 88 F.3d 812, 817 (9th Cir. 1996); *United States v. Gilliam*, 994

F.2d 97, 100 (2d Cir. 1993).[9]

---

[7]At issue in *Old Chief* was "proof of felon status" in the form of a stipulation and not the district court's jury instruction with regard to this element.  *See* 519 U.S. at 183 n.7.  The Supreme Court briefly addressed the petitioner's proposed jury instruction in a footnote:  "We will not discuss Old Chief's proposed instruction beyond saying that, even on his own legal theory, revision would have been required to dispel ambiguity."  519 U.S. at 176 n2.  In the same footnote, the Court also found erroneous the jury instruction given by the district court because it, too, suffered from ambiguity problems.  *Id*.  Nowhere did the Court discuss the content necessary to dispel a problem of prejudice as to the prior conviction element of a § 922(g)(1) crime.

[8]The Third Circuit cases cited by Merritt concern the admissibility of prior crimes or acts under Federal Rule of Evidence 404(b), *see United States v. Cruz*, 326 F.3d 392 (3d Cir. 2003), and *United States v. Givan*, 320 F.3d 452, 461 n.2 (3d Cir. 2003), and of character evidence to impeach the credibility of a witness under Federal Rules of Evidence 404, 405(a) and 607, *see Government of the Virgin Islands v. Roldan*, 612 F.2d 775, 781 (3d Cir. 1979).  Merritt also relies upon *United States v. Dockery*, a D.C. Circuit case in which the government had charged a § 922(g)(1) count together with three drug-related counts and the district court did not caution the jury about inferring propensity from the prior conviction to commit the drug crimes.  955 F.2d 50, 55.  (D.C. Cir. 1992).  These cases are instructive on the use of curative instructions to prevent unfair prejudice against a criminal defendant.  *See, e.g., Roldan*, 612 F.2d 775, 781 (3d Cir. 1979) ("Whenever an exception under Fed. R. Evid. 405 allows introduction of prior bad acts, the defendant is entitled to a limiting jury instruction to the effect that the prior bad act testimony does not bear on the defendant's propensity to commit such crimes again.").  However, none of the cited cases addresses the content of a jury instruction with respect to the prior conviction element of the felon-in-possession crime proscribed under § 922(g)(1).

[9]The trial court's instruction also resembles the following suggested charge for felon-in-possession cases found in the Honorable Leonard B. Sand's *Modern Federal Jury Instructions*:

I instruct you, in this connection, that the prior conviction that is an element of the charge here (and is not disputed) is only to be considered by you for the fact that it exists, and for nothing else.  You are not to consider it for any other purpose.  You

Therefore, it is evident that the trial court acknowledged the potential of undue prejudice and clearly cautioned the jury to consider the prior felony conviction only in deciding whether Merritt had a prior felony conviction.  During the trial, the court also regularly admonished the jurors that they were required to follow its instructions.  (N.T. 1.3, 1.6, 1.11-12, 2.91, 2.93.) While it is true that the fact of a prior conviction might have an injurious effect on Merritt in spite of the court's limiting instruction, "where the district court issues a proper curative instruction, we must presume that a conscientious jury will only use the proof of the prior

---

are not to speculate as to what it was for.  You may not consider the prior conviction in deciding whether it is more likely than not that the defendant was in knowing possession of the gun that is charged, which is the disputed element of the offense.

2 Leonard B. Sand et al., *Modern Federal Jury Instructions–Criminal*, ¶ 35.07 at Inst. 35-48 (2006).  In addition, the trial court's instruction resembles the following instruction recommended by the Third Circuit Committee on Model Criminal Jury Instructions and based on the one given in *Beck*, 346 F.3d at 308 n.4:

> This prior conviction has been brought to your attention only because it tends to establish one of the elements of the crime of possession of a firearm by a convicted felon as set forth in the indictment, specifically, that the defendant had a prior felony conviction.  You are not to speculate as to the nature of the conviction.  You may not consider the prior conviction in deciding whether *(name of defendant)* was in knowing possession of the gun that *(he)(she)* is charged in this case with possessing, which is a disputed issue in this case.
>
> The fact that the defendant was found guilty of another crime on another occasion does not mean that *(he)(she)* committed this crime on *(date of offense charged in indictment)*, and you must not use *(his)(her)* guilt of the other crime as proof of the crime charged in this case except for the one element of this crime which I have mentioned.  You may find the defendant guilty of this crime only if the government has proved beyond a reasonable doubt all of the elements of this crime and that the defendant committed it.

3d Cir. Model Criminal Jury Instr. § 2.13 (2006), http://www.ca3.uscourts.gov/criminaljury/Website-Chapter2.wpd.  Neither includes the language concerning "a bad person," "bad character," "possess[ion] of a criminal personality," or "propensity to engage in unlawful conduct" which Merritt now argues is mandatory. (*See* Pet'r's Br. 8.)

conviction to satisfy the element of the crime." *Gilliam*, 944 F.2d at 100; *see also United States v. Cross*, 308 F.3d 308, 327 (3d Cir. 2002) (quoting *Zafiro v. United States*, 506 U.S. 534, 541 (1993)) ("[J]uries are presumed to follow their instructions.").  Consequently, it cannot be said that trial counsel's failure to object to a standard jury charge which was not defective rendered his performance deficient.

Moreover, Merritt cannot show a reasonable probability that the outcome of his trial would have been different if trial counsel had objected to the court's instructions.  The relevant question in a federal habeas review of jury instructions is "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process,' not merely 'whether the instruction is undesirable, erroneous, or even universally condemned.'"  *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (quoting *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973)); *see also Jacobs v. Horn*, 395 F.3d 92, 111 (3d Cir. 2005).  In support of his claim of prejudice, Merritt broadly asserts that "the outcome of this case could well have been different had the jury been properly instructed."  (Pet'r's Br. 8.)  However, Merritt does not argue nor can it be said that there is any hint that the jury misapplied the trial court's repeated direction to follow its instructions as outlined above.  Moreover, in light of the substantial evidence supporting the government's case, including the testimony of Officer Bass, Quandre Anderson, Tyrone Lane and Aesha Wheeler, even if counsel had raised Merritt's suggested objection, there is no reasonable likelihood the result would have been different or that the result was not reliable.  Thus, because the record conclusively shows that Merritt's second claim is without merit, I will deny it without an evidentiary hearing.

**V.      Conclusion**

Finally, I must determine whether a certificate of appealability should issue.  The court may issue a certificate of appealability only if the defendant "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This requires that the defendant "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, I have determined that Merritt's two ineffective assistance of counsel claims are without merit.  I am persuaded that reasonable jurists would not find this assessment debatable or wrong.  Therefore, Merritt has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not issue.

An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| | : | NO. 05-00035 |
| v. | : | |
| | : | |
| | : | CIVIL ACTION |
| ROBERT MERRITT | : | |
| | : | NO. 06-4619 |

# Order

Yohn, J.

AND NOW on this _____ day of July 2007, upon consideration of defendant Robert

Merritt's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Doc.

No. 58), the government's response thereto, defendant's reply and the government's sur-reply, it

is hereby **ORDERED** that:

1.    The defendant's motion is **DENIED**.

2.    The defendant having failed to make a substantial showing of the denial of a

constitutional right, there is no ground to issue a certificate of appealability.

3.    The Clerk shall mark this case **CLOSED** for statistical purposes.

_____s/ William H. Yohn Jr._____

William H. Yohn Jr., Judge